## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**JANE DOE,** *On Behalf of Herself and All Others Similarly Situated*
c/o Migliaccio & Rathod, LLP
412 H St. NE #302
Washington, D.C. 20002[1]

*Plaintiff*

v.

**BOZZUTO MANAGEMENT COMPANY**
6406 Ivy Lane Ste 700
Greenbelt, MD 20770

SERVE:

MICHAEL A. SCHLEGEL
6406 Ivy Lane Ste 700
Greenbelt, MD 20770

*Defendant*

**Case No:** 23-cv-3360 (TJK)

**Judge:** Timothy J. Kelly

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiff Jane Doe brings this action against Defendant Bozzuto Management Company for discriminatory and unfair policies and practices that limit affordable housing and violate the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01, *et seq.*, and the Consumer Protection and Procedures Act (CPPA), D.C.  Code §§ 28-3901 *et seq*. As alleged herein, Defendant Bozzuto denied Plaintiff's application for rental housing based on its

---

[1]Prior to this case's removal to this Court, the Superior Court ordered that Plaintiff could proceed under a pseudonym.  Plaintiff is also a participant in the District of Columbia's address confidentiality program (D.C. Code §§ 4-555.01-.12) and substitutes the address of her attorney in place of her own.

1

practice of denying applications submitted by prospective tenants who are recipients of housing subsidies because of their source of income, income level, and credit score, in violation of the DCHRA and CPPA. In addition, Defendant Bozzuto required Plaintiff to pay her deposit with a money order, while allowing unsubsidized applicants to pay using alternative payment methods, in violation of the DCHRA and CPPA.

2.      This action seeks monetary damages and injunctive relief for Plaintiff, the general public of the District of Columbia, and all those similarly situated.

## PARTIES

3.      Plaintiff Jane Doe is a resident of the District of Columbia. Plaintiff is a recipient of rental housing assistance through the District of Columbia Family Re-housing and Stabilization Program ("FRSP"). D.C. Code § 29 D.C.M.R. Chapter 29-78.

4.      Defendant Bozzuto Management Company ("Bozzuto") is a corporation incorporated in the State of Maryland with its headquarters at 6406 Ivy Lane, Ste 700, Greenbelt MD 20770. Bozzuto is the property manager of Apollo on H/The Apollo. Bozzuto is the Property Manager of dozens of other apartment buildings, totaling thousands of units, in the District of Columbia.

## NON-PARTY EMPLOYEES OF DEFENDANT

5.      Josh Auguste is the Leasing Manager for The Apollo. On information and belief, Mr. Auguste was employed by Defendant Bozzuto during the relevant time period.

## JURISDICTION AND VENUE

6.      Jurisdiction of this Court arises under D.C. Code §§ 11-921, 28-3905(k)(2) and 13-423.

7.     Venue is proper in this Court because the acts and transactions giving rise to this litigation occurred here.

**FACTS**

8.     Apollo on H/The Apollo (hereinafter, "The Apollo") is an eight-story apartment building located at 600 H St. NE in Washington, D.C.

9.     The Apollo has 8 stories with 432 units.

10.    The Apollo is listed on the Bozzuto Website (bozzuto.com) as a Bozzuto-managed property.

11.    On March 23, 2023, Plaintiff received a formal certification letter from an FRSP Referring Program stating that she met the criteria for FRSP eligibility and was therefore eligible to receive an FRSP subsidy.

12.    On April 17, 2023, Unit 428 in the Apollo was listed as available on the Bozzuto Website. After viewing the Unit on the Bozzuto Website and reviewing the on-line application, Plaintiff went in-person to the leasing office at The Apollo at 600 H Street, NE, in Washington, D.C., to ask questions about the information requested in the on-line application. Plaintiff informed a Bozzuto employee working at the leasing office that she sought to apply and rent with the assistance of an FRSP subsidy. The Bozzuto employee told Plaintiff that because she was a recipient of an FRSP subsidy, she was required to pay the deposit by money order or cashier's check.

13.    Plaintiff completed a paper application in-person and submitted it to the Apollo leasing office together with a cashier's check in the amount of the security deposit. Plaintiff paid $10.00 out of pocket to obtain the cashier's check. Plaintiff disclosed in the application that she sought to rent with the assistance of an FRSP subsidy and that she would apply that subsidy to

the lease.  She also disclosed that she earns monthly income in addition to the income received from her FRSP subsidy.

14.     On April 18, Josh Auguste, the Leasing Manager of the Apollo, emailed Plaintiff, stating that Bozzuto rejected her application. The email stated:

//



15.     Plaintiff replied to Mr. Auguste's email on April 19, asking, "I guess I'm confused why my credit and income matter when I'm not the one paying you and you're getting your rent in full from the district."

16.    Mr. Auguste responded the next day that "while your income doesn't matter for this particular screening, your credit score, which encompasses any loans, faulted/late payments, etc. is still factored in. While DC Housing does pay your rent, you're still responsible for paying the utility charges assessed to you."

17.    On or about April 17, 2023, Defendant provided Plaintiff with an "adverse action letter" pursuant to 15 U.S.C. § 1681 *et seq.* The letter stated that Plaintiff's application was rejected because of her credit score and because she had "insufficient income to support rent." However, the FRSP subsidy for which Plaintiff sought to rent with the assistance of guarantees that 100% of Plaintiff's rent and any security deposit will be paid directly to Plaintiff's landlord from the D.C. Department of Human Services ("DHS"). The additional income that Plaintiff disclosed on her application was sufficient to pay utility costs associated with leasing the apartment. Defendant Bozzuto did not consider FRSP income in evaluating her ability to pay rent. In addition, Defendant Bozzuto evaluated her rental applications on the basis of her income level.

18.    As reflected in Mr. Auguste's correspondence with Plaintiff, Defendant Bozzuto has a practice of rejecting applicants for rental housing supported by a housing voucher or subsidy on the basis of their credit score. As reflected in the April 17, 2023 adverse action letter, Defendant Bozzuto has a practice of evaluating rental applications submitted by housing voucher or subsidy recipient on the basis of their income level, and rejecting their application if their income is insufficient, and of refusing to consider income from housing subsidies toward income eligible for payment of rent and utilities. However, on information and belief, Defendant Bozzuto has considered income from non-voucher sources as counting toward applicants' total income that may be used to cover both rent and utilities.

19.     As a result of Defendant Bozzuto's rejection of Plaintiff's application, Plaintiff had to rent alternative housing at a monthly rate of $3,250 per month, in addition to utilities costs and a hotel tax. The monthly rental rate alone was $3,086.50 more than she would have had to pay, per month, with the support of her housing subsidy at The Apollo, and $828 more than she would have had to pay, per month, without the subsidy.

20.     In addition, the alternative housing Plaintiff was required to obtain due to Bozzuto's rejection of her application is located farther from D.C. Metro lines, grocery stores, and from other essential resources, than The Apollo. As a result, Plaintiff incurred (and is continuing to incur) hundreds of dollars of added expenses in bus fares and rideshare fees that she would not have incurred had Bozzuto not rejected her application because of her credit and income. In addition, Plaintiff incurred greater moving expenses than she would have incurred had her application been granted because her previous residence was closer to The Apollo than her alternative housing.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 and case law thereunder on behalf of herself and Classes of all others similarly situated.

22.     The Class, represented by Plaintiff, is defined as: All individuals who submitted an application to Bozzuto to lease property in the District of Columbia with assistance of a housing voucher or subsidy.

23.     The Subclass, represented by Plaintiff, is defined as: All individuals who submitted an application to Bozzuto to lease property in the District of Columbia with the assistance of a housing voucher or subsidy, and whose applications were rejected by Bozzuto in whole or in part on the basis of their income level or credit score. Excluded from the Class are:

(a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and their subsidiaries, affiliates, present and former employees, and family members; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

24.    *Numerosity*: Bozutto manages dozens of multi-unit complexes in the District of Columbia, totaling thousands of units.  The Apollo alone has over four-hundred (400) units. Thus, the number of potential Class members is at least in the hundreds, making joinder impractical. Moreover, the Class is composed of an easily ascertainable set of individuals, based on (a) records in Defendants' possession of each Class members' application and the reasons for the denial, and/or (b) correspondence between Bozzuto employees and the Class Members. The precise number of Class members can only be ascertained through discovery, which includes Defendants' leasing and other records. Disposition through a class action will benefit both the parties and this Court by achieving economies of scale in efficiently managing the large number of potential claims against Bozzuto.

25.    *Commonality*: The critical questions of law and fact common to Plaintiff and the Class include (a) whether it was unlawful for Defendants to refuse to rent to the Class in whole or in part because of their sources of income and/or credit scores as applicants with housing vouchers and/or other rental subsidies; and (b) whether Defendants unlawfully imposed different terms on leasing transactions with the Class because of their source of income.

26.    *Typicality*: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's unlawful practices of rejecting leasing applications in whole or in part on the basis of their source of income and credit score, and of imposing different terms on leasing transactions with the Class because of their source of income.

27.     *Adequate Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including but not limited to consumer class actions involving, among other things, tenant actions arising under the CPPA, overcharges for consumer services, and consumer protection more generally.

28.     *Predominance* and *Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will compound the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### DISCRIMINATORY REFUSALS TO TRANSACT
### IN VIOLATION OF THE DCHRA, D.C. CODE § 2-1402.21(a),(b),(g)

29.     Each of the preceding paragraphs is incorporated by reference herein.

30.     The District of Columbia Human Rights Act ("DCHRA") makes it "an unlawful discriminatory practice . . . [t]o interrupt or terminate, or refuse or fail to initiate or conduct any transaction in real property; or to require different terms for such transaction," "wholly or

partially for a discriminatory reason based on the actual or perceived . . .source of income . . .of any individual[.]" D.C. Code § 2-1402.21(a)(1).

31.    DCHRA also prohibits "any of the above said acts for any reason that would not have been asserted but for, wholly or partially, a discriminatory reason based on the actual or perceived. . . source of income . . . of any individual." D.C. Code § 2-1402.21(b).

32.    Housing vouchers and subsidies awarded under the Family Re-housing and Stabilization Program ("FRSP") are a source of income under the DCHRA. D.C. Code § 2-1402.21(e); *see* OHR Guidance No. 16-01 (stating that source of income includes "short- and long-term rental subsidies" including but not limited to "Rapid Re-Housing").

33.    In addition, DCHRA makes it unlawful "to do any of the above acts prohibited in subsection (a) or subsection (b) of this section to a prospective tenant seeking to rent with the assistance of an income-based housing subsidy based on: . . . . Income level (other than whether or not the level is below a threshold as required by local or federal law) [or]   a credit score" unless "required by federal law[.]" D.C. Code § 2-1402.21(g)(1)(B).

34.    Plaintiff applied to lease an apartment from Defendants at the Apollo with the assistance of an income-based housing subsidy.

35.    Defendant required Plaintiff to pay the security deposit by money-order because she applied with a housing subsidy, in violation of D.C. Code § 2-1402.21(a)(1) & (b).

36.    Defendant rejected her application because she sought to apply with the assistance of a housing subsidy, because Defendant refused to apply housing-subsidy income toward her income eligible for rent and utilities, and based on her credit score and income level as an applicant with a housing subsidy, in violation of D.C. Code § 2-1402.21(a), (b), & (g)(1)(B).

37.    Bozzuto's consideration of Plaintiff's income and credit score was not required by local or federal law.

## COUNT II
## VIOLATIONS OF DISTRICT OF COLUMBIA CONSUMER PROTECTION & PROCEDURES ACT ("CPPA")

38.    Each of the preceding paragraphs is incorporated by reference herein.

39.    The District of Columbia Consumer Protection & Procedures Act ("CPPA") prohibits "any person [from] engag[ing] in unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby." D.C. Code § 28-3904.

40.    Defendant is a "person," and Plaintiff is a "consumer," within the meaning of the CCPA (D.C. Code § 28-3901(a)(1)-(2) &§ 28-3905(k)(1))).

41.    The leasing of residential real property is a "trade practice" within the meaning of the CCPA (D.C. Code. § 28-3901(a)(6)(7)).

42.    CCPA (D.C. Code § 28-3904) includes a non-exhaustive list of unfair and deceptive trade practices, including to:

> . . .
> (e) represent as to a material fact which has a tendency to mislead;
> (e-1) represent that a transaction confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law;
> (f) fail to state a material fact if such failure tends to mislead;
> . . .
> (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or as offered;
> . . .
> (r) make or enforce unconscionable terms or provisions of sales or leases;

43.    Defendant Bozzuto engages in the following unlawful and unfair trade practices:

(a)    evaluating and rejecting applications for rental housing without counting income from housing subsidies toward eligibility requirements, in violation of the DCHRA;

10

(b)     evaluating and rejecting applications for rental housing submitted with the support of a housing voucher on the basis of the applicant's income level and credit score, in violation of the DCHRA; and

(c) failing to disclose to applicants seeking to rent with the assistance of housing vouchers or subsidies its practices (a) and (b), above, at any time before it rejects their rental applications.

44.    Plaintiff and reasonable consumers who seek to rent with the assistance of housing vouchers would not apply to rent housing from Bozzuto if Bozzuto made appropriate disclosure of its practice of (a) refusing to consider income from housing voucher subsidies toward eligibility requirements, and (b) evaluating and rejecting applications for rental housing submitted with the support of a housing voucher on the basis of the applicant's income level and credit score, in violation of the DCHRA.

45.    If Bozzuto had disclosed its practices to Plaintiff, she would not have applied to rent housing with Bozzuto and would not have paid the $10.00 she was required to pay in order to obtain the cashier's check that Bozzuto demanded because she sought to apply with assistance of a subsidy.

46.    Defendant Bozzuto's practice of evaluating applicants for apartments who will apply housing subsidies to their leases is "unfair" and "deceptive," including for the following reasons:

    a. The DCHRA prohibits Defendant Bozzuto "[t]o interrupt or terminate, or refuse or fail to initiate or conduct any transaction in real property[,] or to require different terms for such transaction . . . wholly or partially" because an applicant applies with a housing voucher;" D.C. Code § 2-1402.21(a)(1).

     b.   The DCHRA prohibits Bozzuto from interrupting, terminating, or requiring different terms from "a prospective tenant seeking to rent with the assistance of an income-based housing subsidy based on: Income level [or] a credit score;" D.C. Code § 2-1402.21(g)(1)(B).

     c.   Because Defendant Bozzuto holds itself out through the Bozzuto Website and through its registration filings with the District of Columbia and other jurisdictions as authorized to do business in the District of Columbia, Defendant Bozzuto causes consumers in the District of Columbia to have a reasonable expectation that Bozzuto complied with all applicable laws of this District, including the DCHRA.

47.    Although not required by the CPPA, Plaintiff was damaged by Defendant Bozzuto's practice of rejecting applicants for rental housing applying with the assistance of a housing subsidy on the basis of their source of income and/or credit score. Plaintiff was damaged by (a) Bozzuto's refusal to count her voucher income toward its eligibility requirements and (b) Bozzuto's rejection of her application on the basis of her income level and credit score because Bozzuto's practices caused her application to be denied and caused her to suffer damages, as alleged.

48.    Plaintiff was damaged by Bozzuto's failure to disclose its practice of refusing to count voucher income toward its eligibility requirements, and its failure to disclose that it considers her credit score and income level, in violation of D.C. Code § 2-1402.21(g)(1)(B). Had Bozzuto disclosed these practices on its website, in its rental application materials, via its Leasing Manager, or in any other location or medium accessible to Plaintiff, Plaintiff would not

have applied and would not have paid out-of-pocket for the cashier's check that Bozzuto required her to submit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, all others similarly situated, and the general public of the District of Columbia, prays for a judgment against Defendants as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4);

B. Designating Plaintiff as representative of the Class and her counsel as Class counsel;

C. Entering judgment in favor of Plaintiff, the Class, and the general public of the District of Columbia and against Defendant for all damages;

D. Granting Plaintiff, the Class and the general public of the District of Columbia treble damages or statutory damages, whichever is greater;

E. Granting Plaintiff her costs of prosecuting this action, including attorneys' fees, experts' fees and costs together with interest;

F. Granting injunctive relief requiring Defendants to cease and desist from imposing the unlawful leasing requirements upon housing voucher or subsidy recipients alleged herein;

G. Granting such further relief as the Court deems just, including all relief provided for by D.C. Code §§ 2-1403.16(b) & 28-3905(k)(2).

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 2, 2025                    Respectfully submitted,


                                      */s/ Jason S. Rathod*
                                      Jason S. Rathod, Esq. (No. 1000882)

Nicholas A. Migliaccio, Esq. (No. 484366)
**MIGLIACCIO & RATHOD, LLP**
412 H St. NE
Washington, DC 20002
(202) 470-3520 (Tel.)
(202) 800-2730 (Fax)
jrathod@classlawdc.com
nmigliaccio@classlawdc.com